**WESTERN PACIFIC STOCKHOLDERS' PROTECTIVE COMMITTEE, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Union Pacific, Intervenor.**

No. 87–1145.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 8, 1988.

Decided June 10, 1988.

Edward K. Wheeler, with whom Richard H. Streeter, Washington, D.C., was on the brief, for petitioner.

John J. McCarthy, Jr., Deputy Associate General Counsel, I.C.C., with whom Robert S. Burk, General Counsel, I.C.C., Henri F. Rush, Deputy General Counsel, I.C.C., John J. Powers, III and David Seidman, Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Charles A. Miller, Joanne B. Grossman and James V. Dolan, Washington, D.C., were on the brief, for intervenor, Union Pacific Corp. and Union Pacific R. Co.

Before STARR and SILBERMAN, Circuit Judges, and HAROLD H. GREENE,* Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge SILBERMAN.

_____

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

SILBERMAN, Circuit Judge:

In 1982 the ICC, pursuant to 49 U.S.C. § 11344(b) (1982), approved a proposed merger between a subsidiary of Union Pacific Corporation (UPC) and Western Pacific Railroad Company (WP). *See Union Pacific—Control—Missouri Pacific; Western Pacific,* 366 I.C.C. 459. The merger, which was effectuated the following year, involved two steps. UPC acquired 87% of WP's stock through a tender offer and then, at the second stage, the remaining shareholders were obliged to convert their shares for $20 per share. Some of the shareholders who refused to tender their shares have challenged, *inter alia,* the fairness of the merger's second stage on grounds that the price received inadequately reflected the asset value of the corporation. One, Edward K. Wheeler, petitioned this court for review of the ICC's order, but in 1984 we affirmed the Commission. *Southern Pac. Transp. v. ICC,* 736 F.2d 708 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1171, 84 L.Ed.2d 322 (1985). Another, Daniel Bruno, in 1983 unsuccessfully sought reopening of the ICC's order, claiming that he presented material new evidence of the value of WP's real estate. Then, in 1986 the Western Pacific Stockholders' Protective Committee (SPC), a group of dissenting shareholders with the same Edward K. Wheeler acting as counsel, sought reopening of the proceeding, also claiming *inter alia* that it presented new evidence of the true value of WP's real estate holdings as of the date of the merger. The Commission again refused to reopen and it is from that decision that SPC petitions for review. *See* Finance Docket No. 30,000 (Sub–No. 1), *Union Pac. Corp., Pacific Rail Sys. & Union Pac. R.R.—Control—The Western Pac. R.R.,* (not printed) (Jan. 28, 1987) ("1987 Decision").

The Commission's refusal (twice) to reopen rested primarily on its view that whether or not it could be shown that the fixed assets of WP, including its real estate, were worth more at liquidation than the price paid for the stock is truly irrele-

vant. The method the Commission used to value WP's stock was not the liquidation value of WP's assets, but rather the going concern value as measured by WP's capitalized future earnings, a method we approved on direct review. *Southern Pacific Transp.*, 736 F.2d at 725–727.

■ Wholly aside from any preclusive effect of our prior opinion, we have no authority to entertain this aspect of petitioner's claim. The Commission may reopen a proceeding "on its own initiative because of material error, new evidence, or substantially changed circumstances." 49 U.S.C. § 10327(g)(1). But our review of its refusal to do so is quite limited. The Supreme Court has recently explained that "overturning [a] refusal to reopen requires a showing of the clearest abuse of discretion, and we have actually reversed the ICC only once, in a decision that was promptly restricted to its special facts and stands virtually alone." *ICC v. Brotherhood of Locomotive Eng'rs,* — U.S. —, 107 S.Ct. 2360, 2365, 96 L.Ed.2d 222 (1987) (internal quotes and citations omitted). And, where the petition to reopen is based on alleged "material error" in the *previous proceeding,* a refusal to reopen is completely unreviewable. *Id.* 107 S.Ct. at 2366. Petitioner's argument as to the asset value of WP, whether or not supported by "new evidence," is really a challenge to the ICC's valuation methodology employed in its 1982 decision. As such, it is an allegation of material error in the previous proceeding and therefore unreviewable.

Alternatively, petitioner contends circumstances have changed, so that the ICC's refusal to reopen is an abuse of discretion. SPC claims that the original ICC decision was based (as, it argues, was our prior opinion) on the assumption that the dissenting shareholders would enjoy appraisal rights under Delaware law. The Delaware court, however, concluded that *Schwabacher v. United States,* 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948), ousted it of jurisdiction. The Delaware court understood *Schwabacher* to hold that the predecessor to 49 U.S.C. § 11341(a) preempted state law, and therefore to imply that the ICC has exclusive jurisdiction to pass on the fairness of a merger proposal within the railroad industry and thereby to ensure that all classes of shareholders receive "the full economic equivalent of what they presently hold." 334 U.S. at 199, 68 S.Ct. at 967. *Bruno v. Western Pacific R. Co.,* 498 A.2d 171 (Del. Ch. 1985), *aff'd,* 508 A.2d 72 (Del.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3209, 96 L.Ed.2d 696 (1987). The ICC, according to petitioner, actually focused only on the tender offer and not the second stage transaction because of its assumption that the appraisal procedure would fully protect minority shareholders. If the Commission had known that appraisal rights were not in fact available under Delaware law, petitioner suggests it would or should have considered the implications for minority shareholders.

The difficulty with petitioner's argument is that the 1982 ICC decision never mentioned appraisal rights at all, nor did our opinion affirming the Commission. Indeed, the 1980 merger agreement presented to the Commission for approval did not itself refer to appraisal rights. To be sure, in the 1980 tender offer (and a 1983 proxy statement) UPC stated it would not object to a Delaware appraisal, but neither the merger agreement nor the ICC's decision was conditioned on the availability of this Delaware procedure. The Commission noted in its decision denying reopening, moreover, that the 1983 proxy statement "cited *Schwabacher* and raised the possibility that Delaware courts might find that they lacked jurisdiction over the matter." *1987 Decision* at 2.[1] Petitioner has not shown,

---

**1.** At oral argument before this court on review of the 1982 ICC decision, counsel for UPC assured the panel that "[a] forum exists in Delaware to resolve [the fairness of the $20 per share offer] and that is going to go forward, whatever happens at the ICC or in this appeal." Partial Transcript of Oral Argument, quoted in Petitioner's Brief at 9–10. Thereafter, counsel "suggested" to the Delaware court that it lacked jurisdiction because of *Schwabacher* (which it may well have had an obligation to do). Whether WP misrepresented to shareholders its position concerning appraisal rights is currently the subject of litigation in the Southern District of New York, *see Bruno v. Cook,* 660 F.Supp. 306 (S.D.N.Y.1987), and of course we express no

therefore, that subsequent events in Delaware were a changed condition of either the merger agreement presented to the ICC or the ICC's rationale employed in its 1982 decision approving the merger.

██ We express no opinion as to whether, in light of *Schwabacher*, the ICC is obliged—in a case where the argument is squarely and timely presented—to afford appraisal rights of some kind to dissenting shareholders in a cash out merger. The Commission stated "[i]t does not follow that, because no State court appraisal is available, this Commission necessarily must conduct one." *1987 Decision* at 3. That is true, but, as a matter of corporate law, the states appear to uniformly provide some form of appraisal rights to dissenting shareholders, (although they are divided as to their approaches, *compare Weinburger v. UOP, Inc.*, 457 A.2d 701 (Del.1983) *with Leader v. Hycor, Inc.*, 395 Mass. 215, 479 N.E.2d 173, 178–79 (1985)). If, as the Delaware courts concluded, the Interstate Commerce Act preempts state corporate laws, insofar as they govern the fairness of railroad mergers, the ICC has displaced state courts and has a consequent duty to ensure that, as the Supreme Court said in *Schwabacher*, shareholders receive "the full economic equivalent of what they presently hold," 334 U.S. at 199, 68 S.Ct. at 967. At minimum, that requires the ICC to explicitly consider, in the proper case, whether some type of appraisal rights are available under the Interstate Commerce Act.

Accordingly, the petition for review is *Denied.*

opinion on the issue, but we do not look favorably on counsel's misleading statements to this court.