**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIRK C. FISHER,
*Plaintiff-Appellant*,

v.

LOUIS KEALOHA, as an individual
and in his official capacity as
Honolulu Chief of Police; CITY AND
COUNTY OF HONOLULU,
*Defendants-Appellees*.

No. 14-16514

D.C. No.
1:11-cv-00589-
ACK-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, Senior District Judge, Presiding

Argued and submitted February 21, 2017
Honolulu, Hawaii

Filed May 5, 2017

Before: Alex Kozinski, Michael Daly Hawkins,
and Carlos T. Bea, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Kozinski

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's summary judgment in an action challenging the constitutionality of section 134-7 of the Hawaii Revised Statues, which prohibit plaintiff from owning or possessing firearms because of his 1997 state law conviction for harassment.

The panel determined that although plaintiff stated that he challenged only section 134-7 of the Hawaii Revised Statute, that statute, in relevant part, merely incorporated federal law. Analyzing the federal statutes, the panel rejected plaintiff's contention that 18 U.S.C. § 922(g)(9) was unconstitutional as applied to him. The panel first held that plaintiff's argument that his harassment conviction occurred many years ago, and that he has not committed any other crimes since that time, was not meaningfully distinguishable from the argument that this court rejected in *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

The panel also rejected plaintiff's argument that section 922(g)(9) is unconstitutional as applied to him because Hawaii law provides for only one of the four restoration mechanisms listed in section 921(a)(33)(B)(ii): gubernatorial pardon. The panel held that although this argument was not foreclosed by *Chovan*, plaintiff conceded that he had not applied for a gubernatorial pardon for his 1997 conviction. Thus, the panel concluded that plaintiff failed to avail himself

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the one restoration mechanism that was available to him under Hawaii law, and therefore he was in no position to argue that Hawaii's restoration mechanisms were constitutionally insufficient.

Ruminating, Judge Kozinksi stated that Hawaii's procedure for restoring Second Amendment rights by way of a gubernatorial pardon was notably slender and vested unbridled discretion in a government official. Judge Kozinski stated that while plaintiff's case did not require a review of Hawaii's restoration procedure, other cases will raise the issue.

## COUNSEL

Te-Hina Te-Moana Ickes (argued), Law Offices of Te-Hina Ickes, Honolulu, Hawaii; Donald L. Wilkerson, Law Office of Donald L. Wilkerson ALC, Honolulu, Hawaii; Alan Alexander Beck, Law Offices of Alan Beck, San Diego, California; for Plaintiff-Appellant.

Curtis E. Sherwood (argued) and Sarah T. Casken, Deputies Corporation Counsel; Donna Y.L. Leong, Corporation Counsel; Department of the Corporation Counsel, Honolulu, Hawaii; for Defendants-Appellees.

Kimberly Tsumoto Guidry and Marissa H. Luning, Department of the Attorney General, Honolulu, Hawaii, for Amicus Curiae State of Hawaii.

Andrew E. Siegel, Covington & Burling LLP, Washington, D.C., for Amicus Curiae Brady Center to Prevent Gun Violence.

## OPINION

PER CURIAM:

Kirk Fisher appeals the district court's adverse grant of summary judgment on the issue of whether section 134-7 of the Hawaii Revised Statutes constitutionally prohibits him from owning or possessing firearms because of his 1997 conviction for "harassment" in violation of section 711-1106 of the Hawaii Revised Statutes. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

A resident of Hawaii and former owner of firearms, Fisher was convicted in 1997 of "harass[ing]" his wife and daughter in violation of section 711-1106 of the Hawaii Revised Statutes. Following that conviction, Fisher was placed on probation and surrendered his firearms to the Honolulu Police Department ("HPD") in compliance with a state-court order. After completing his probation, Fisher requested the return of his firearms. The state court granted his request on the condition that there were no outstanding orders or circumstances that otherwise prohibited his possession of firearms under Hawaii or federal law. HPD then returned Fisher's firearms.

More than ten years later, Fisher applied for a permit to acquire an additional firearm. In response, HPD not only denied Fisher's application but also informed him that he was prohibited from owning and possessing firearms altogether because of his 1997 conviction. HPD ordered Fisher to surrender or otherwise lawfully dispose of all firearms that he owned or possessed at that time. Fisher transferred

ownership of his firearms to his wife and sued HPD in federal district court.

Fisher sought monetary and injunctive relief against the City and County of Honolulu and HPD's Chief of Police, Louis Kealoha. Fisher alleged that he is qualified to own and possess firearms under Hawaii law and that HPD's denial of his permit application and its order to surrender his existing firearms violated his Second Amendment rights. The defendants moved for summary judgment, arguing that Fisher's 1997 harassment conviction constitutes a conviction for a "misdemeanor crime of domestic violence" such that both federal and Hawaii law prohibit Fisher from possessing firearms.[1] *See* 18 U.S.C. § 922(g)(9); Haw. Rev. Stat. § 134-7(a). The district court agreed and granted summary judgment to the defendants on all claims. The district court also exercised its discretion to consider additional constitutional arguments that Fisher raised during the summary judgment proceedings, but determined that applying section 134-7 of the Hawaii Revised Statutes to Fisher did not violate the Second Amendment.

---

[1] Earlier in the proceedings, the district court granted preliminary relief to Fisher based on its determination that Fisher's harassment conviction did not constitute a crime of domestic violence. After the Supreme Court's decision *United States v. Castleman*, 134 S. Ct. 1405, 1410 (2014), the defendants filed a new motion for summary judgment, and relying on *Castleman*, the district court determined that Fisher's conviction did, in fact, constitute a crime of domestic violence. On appeal, Fisher no longer contests that the harassment offense underlying his 1997 conviction qualifies categorically as a "misdemeanor crime of domestic violence." Therefore, we will assume that Fisher is a person convicted of a "misdemeanor crime of domestic violence" within the meaning of 18 U.S.C. § 922(g)(9).

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). Because the material facts are not in dispute, we consider only whether the district court correctly applied the law. *See id.* We may affirm on any basis supported by the record. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008).

## DISCUSSION

This appeal involves the interaction of three statutory provisions: (1) section 134-7(a) of the Hawaii Revised Statutes, which prohibits a person from owning or possessing firearms if that person is prohibited from possessing firearms under federal law; (2) 18 U.S.C. § 922(g)(9), which prohibits the possession of firearms by persons convicted of any "misdemeanor crime of domestic violence"; and (3) 18 U.S.C. § 921(a)(33)(B)(ii), which provides that a person "shall not be considered to have been convicted of [a misdemeanor crime of domestic violence] . . . if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored." Although Fisher states that he challenges only section 134-7, that statute, in relevant part, merely incorporates federal law. Consequently, much of his argument (and our analysis) focuses on the latter federal statutes.

Fisher's argument proceeds in two parts. First, he contends that, as a matter of statutory construction, section 922(g)(9) applies only in states where each of the mechanisms listed in section 921(a)(33)(B)(ii) (expungement,

set-aside, pardon, and civil rights restoration) are available to restore Second Amendment rights. Second, he contends that even if the statute itself does not require the availability of all listed mechanisms, Hawaii's application of section 922(g)(9)'s prohibition to Fisher is unconstitutional without them.

A. *Interpretation of 18 U.S.C. § 921(a)(33)(B)(ii).*

The issue of statutory construction presented in this case is easily resolved. As we have said, section 922(g)(9) provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence" to possess firearms. 18 U.S.C. § 922(g)(9). A person "shall not be considered to have been convicted of a [misdemeanor crime of domestic violence] . . . if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored . . . unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* § 921(a)(33)(B)(ii).

The plain language of these statutory provisions makes clear that section 921(a)(33)(B)(ii) creates exceptions to section 922(g)(9)'s general prohibition, rather than preconditions to its application. Cases interpreting 18 U.S.C. § 921(a)(20), a similar provision which exempts felons from section 922(g)(1)'s prohibition on firearm possession on the same four grounds, have reached the same conclusion. *See Beecham v. United States*, 511 U.S. 368, 373 (1994) (rejecting the assumption "that Congress intended felons convicted by all jurisdictions to have access to all the procedures (pardon, expungement, set-aside, and civil rights

restoration) specified in [section 921(a)(20)]"); *Logan v. United States*, 552 U.S. 23, 35–36 (2007) (noting that sections 921(a)(20) and 921(a)(33)(B)(ii) are "corresponding" and interpreting them in parallel for that reason). Therefore, as a matter of statutory construction, the unavailability of a procedure for either expungement, set-aside, pardon, or civil rights restoration does not remove Fisher from the ambit of section 922(g)(9)'s prohibition or, by extension, Hawaii Revised Statute section 134-7(a)'s prohibition.

B. *Second Amendment Challenge.*

The constitutional question implicated in this case, on the other hand, is harder than it seems. To determine whether a law impermissibly infringes Second Amendment rights, we must ask whether the challenged law burdens conduct protected by the Second Amendment, and if so, we apply a level of scrutiny that corresponds to the nature and degree of the burden. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

We have previously determined that section 922(g)(9) burdens conduct protected by the Second Amendment and upheld its constitutionality, facially and as-applied, under intermediate scrutiny. *Id.* at 1137–42. *Chovan* considered, among other things, whether section 922(g)(9) could be constitutionally applied to a defendant based on a fifteen-year-old domestic violence misdemeanor conviction. *Id.* at 1141–42. We recognized that keeping firearms out of the hands of domestic abusers is an important government interest and noted the high rate of recidivism for domestic abusers and the number and likelihood of domestic violence deaths involving the use of a firearm. *Id.* at 1140.

We also rejected Chovan's argument that section 922(g)(9) could not constitutionally apply to him because he had committed no further acts of domestic violence in the fifteen years following his conviction. *Id.* at 1141–42. Even assuming that Chovan had committed no such acts, we explained, Chovan had failed to adduce sufficient evidence: (1) contradicting the government's evidence regarding the high rate of domestic violence recidivism; and (2) showing that a domestic abuser who has not re-offended after fifteen years is unlikely to do so again. *Id.* Thus, under intermediate scrutiny, the statute addressed a substantial governmental interest and was tailored sufficiently to satisfy intermediate scrutiny. *Id.* at 1142.

Here, Fisher argues that section 922(g)(9) is unconstitutional as applied to him for two reasons. First, Fisher argues, his harassment conviction occurred many years ago, and he has not committed any other crimes since that time. This argument is not meaningfully distinguishable from the one that we rejected in *Chovan*, and we reject it here as well. *See id.* at 1141–42.

Second, Fisher argues that section 922(g)(9) is unconstitutional as applied to him because Hawaii law provides for only one of the four restoration mechanisms listed in section 921(a)(33)(B)(ii): gubernatorial pardon. Though this second argument is not foreclosed by *Chovan*,[2]

---

[2] The defendants argue that our decision in *Chovan* forecloses this argument as well. Unlike Fisher, however, Chovan never argued that section 922(g)(9) was unconstitutional as applied to him because California (Chovan's state of conviction) provided too few of the restoration mechanisms listed in section 921(a)(33)(B)(ii). *See Chovan*, 735 F.3d at 1137–42. Indeed, in *Chovan*, we applied "intermediate" rather than "strict" judicial scrutiny in part because section 922(g)(9)'s "burden"

we decline to address it here. Fisher concedes that he has not applied for a gubernatorial pardon for his 1997 conviction. Thus, Fisher has failed to avail himself of the one restoration mechanism that *is* available to him under Hawaii law, and he is in no position to argue that Hawaii's restoration mechanisms are constitutionally insufficient. *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) ("Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy." (internal quotation marks and citations omitted)).

## CONCLUSION

Because we affirm the district court's decision on the basis of Fisher's as-applied challenge to section 134-7(a) of the Hawaii Revised Statutes, we need not consider Fisher's remaining arguments regarding section 134-7(b).**[3]** Nor do we

---

on Second Amendment rights was "lightened" by those mechanisms. *Id* at 1138; *see also id.* at 1151 (Bea, J., concurring) (concluding that section 922(g)(9) was "narrowly tailored" to a "compelling" government interest in part because of the restoration mechanisms listed in section 921(a)(33)(B)(ii)). Thus, we reject the defendants' contention that *Chovan* forecloses Fisher's second argument here.

**[3]** Section 134-7(b) of the Hawaii Revised Statutes provides that a person may not "own, possess, or control any firearm" if the person "has been convicted in [Hawaii] or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug." In his briefing, Fisher argues that insofar as section 134-7(b) independently prohibits him from possessing a firearm as a person convicted of a "crime of violence," that provision violates the Second Amendment, because it allows no exceptions for expungement, set-aside, pardon, or the restoration of civil rights. We do not reach Fisher's challenge to section 134-7(b) because,

reach his due process argument regarding Hawaii's gubernatorial pardon process, which he raises for the first time on appeal. *See AlohaCare v. Haw. Dep't of Human Servs.*, 572 F.3d 740, 744 (9th Cir. 2009) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal.").

**AFFIRMED.**

KOZINSKI, Circuit Judge, ruminating:

A state's procedure for restoring Second Amendment rights bears directly on the degree to which the state encumbers those rights. *See United States* v. *Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013). Thus, despite defendants' and amici's furious protestations to the contrary, we must consider Hawaii's available restoration procedures. Our modern Second Amendment jurisprudence trains its sights on the degree to which the state burdens the right and whether that burden is tailored to the state's goal. *See Fyock* v. *Sunnyvale*, 779 F.3d 991, 998–1000 (9th Cir. 2015); *see also District of Columbia* v. *Heller*, 554 U.S. 570, 628 n.27 (2008). Whether a state has a procedure for restoring Second Amendment rights plainly affects both the weight of the burden and our measure of its tailoring.

Criminal punishment, of course, always involves the deprivation of rights, but such deprivations can still raise constitutional concerns. *See, e.g.*, *Turner* v. *Safley*, 482 U.S.

---

as we have explained, we conclude that Fisher can constitutionally be denied a firearms permit pursuant to section 134-7(a).

78 (1987) (marriage and speech); *Hunter* v. *Underwood*, 471 U.S. 222 (1985) (equal protection); *Mayweathers* v. *Newland*, 258 F.3d 930 (9th Cir. 2001) (free exercise).  The extent of the deprivation matters.  Most recently, for example, federal courts have looked skeptically at lifelong restrictions on sex offenders' Internet access.  *See, e.g.*, *Doe* v. *Prosecutor, Marion Cty.*, 705 F.3d 694, 695 (7th Cir. 2013); *see also Packingham* v. *North Carolina*, 137 S. Ct. 368 (2016) (mem.) (granting certiorari on a similar issue).  While restrictions on each right have their own distinctive history—and restrictions on the Second Amendment are no exception, *see Heller*, 554 U.S. at 626–28—it is unsurprising that we might look askance at a state's permanent restriction on a misdemeanant's right to bear arms.

Hawaii's procedure for restoring Second Amendment rights is notably slender:  The governor can pardon someone.  But gubernatorial clemency is without constraint; as Blackstone put it, an executive's mercy springs from "a court of equity in his own breast."  4 William Blackstone, *Commentaries* *390.  This unbounded discretion sits in uneasy tension with how rights function.  A right is a check on state power, a check that loses its force when it exists at the mercy of the state.  Government whim is the last refuge of a precarious right.  And while Fisher's case gives us no occasion to seek better refuge, others will.

In other contexts, we don't let constitutional rights hinge on unbounded discretion; the Supreme Court has told us, for example, that "[t]he First Amendment prohibits the vesting of such unbridled discretion in a government official."  *Forsyth County* v. *Nationalist Movement*, 505 U.S. 123, 133 (1992).  Despite what some may continue to hope, the Supreme Court seems unlikely to reconsider *Heller*.  The time has come to

treat the Second Amendment as a real constitutional right. It's here to stay.